IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACKIE M. JACKSON and WANDA S. AUSTIN, </br></br> Plaintiffs, </br> v. </br></br> THE CIT GROUP/CONSUMER FINANCE, INC., a Corporation, MOREQUITY, INC. a Corporation, THE APPLICATION CENTER LTD, a Corporation doing business as THE APPLICATION CENTER, </br></br> Defendants. | 2:06-cv-543 |

**MEMORANDUM OPINION AND ORDER**

Now pending before the Court are Defendant The CIT Group/Consumer Finance, Inc.'s ("CIT") MOTION FOR SUMMARY JUDGMENT *(Document No. 34)* and Defendant MorEquity, Inc.'s ("MorEquity") MOTION FOR SUMMARY JUDGMENT *(Document No. 38)*. Plaintiffs have filed responses to the motions and the issues have been thoroughly briefed and are ripe for disposition.

Factual and Procedural Background

This action was originally filed under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, in state court and removed by Defendants to this Court. Plaintiffs are sisters who purchased a home in 1981 on Mt. Vernon Street in the Homewood section of Pittsburgh for $16,000 cash. In September 2001, Ms. Jackson responded to a television advertisement by

Defendant, The Application Center Ltd., to inquire about minor home repairs. She was allegedly induced to enter into a contract for home improvements, to borrow the sum of $33,750.00, and accede to a mortgage on the home in that amount. The Application Center organized the parties, secured CIT as a lender, obtained the contractor and appointed Corestate Settlement Services ("Corestate") to conduct the closing. Plaintiffs assert that they requested to use their own contractor, but were told that they were required to use Brimanda Builders, the contractor chosen by The Application Center. The contract between Plaintiffs and Brimanda Builders is dated September 26, 2001.

The closing occurred in Plaintiffs' home on November 9, 2001. John Morell from Corestates was the only person who met with Plaintiffs and he conducted the closing. Plaintiff, Jackie Jackson, signed a Promissory Note, a Uniform Residential Loan Application, a U.S. Department of Housing and Urban Development Settlement Statement, a Federal Disclosure Statement and a Real Property Mortgage (*See* Document No. 41, Appendices 3-7). Plaintiffs were also given a Notice of Right to Cancel. No representative of CIT attended the closing, although a check in the amount of $33,374.00 was sent from CIT. Of this amount, $24,451.84 was to be paid to Ms. Jackson. Morell instructed Ms. Jackson to endorse the check and return it to him. The check then was sent immediately to Brimanda Builders. Thus, Plaintiffs were deprived of the ability to withhold payment to the contractor for non-conforming work. All Plaintiffs received was a check in the amount of $2040.00. Certain other disbursements of approximately $6,095 were made from the loan proceeds, including payments to PHFA, the City and County treasurers and National City Bank.

Plaintiffs made monthly payments to CIT from December 2001 through February 2002,

after which CIT sold the loan to Defendant MorEquity.[1] Plaintiffs continued to make the required payments to MorEquity through April 2003.

The contractor who actually performed the work was Porter Contracting. The work was allegedly done so poorly that it amounted to fraud and had a negative value impact because it ruined the infrastructure of the house. The cost to repair the poor work exceeds the value of the house. After trying for more than a year to get the contractor to remedy the improper work, Plaintiffs stopped making payments on the mortgage. On October 3, 2003, Plaintiffs' attorney sent a notice letter to CIT that Plaintiffs were rescinding the contract pursuant to TILA. CIT refused to take any action to rescind the contract or to terminate the security interest, which Plaintiffs contend is required by TILA, 15 U.S.C. § 1635(b) and Regulation Z, 12 C.F.R. § 226.23(d)(2).

This lawsuit was filed on March 20, 2006. In an October 30, 2006 Memorandum Opinion and Order, the Court denied Defendants' Motions to Dismiss, noting that the parties had not provided the applicable loan documents. The Court observed that Defendants would be entitled to renew their arguments upon a more fully-developed record at the summary judgment stage. The relevant loan documents have now been provided. The Court granted Plaintiffs' Motion for Default Judgment against Defendant, The Application Center Ltd.

Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

[Summary Judgment] shall be rendered forthwith if the pleadings, depositions,

---

[1]Thus, MorEquity's liability is contingent upon that of CIT.

answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there

is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party, who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-250.

Legal Analysis

Plaintiffs seek a declaration that the transaction is rescinded and that Defendants' security interest in their Mt. Vernon Street property is terminated. Although a notice of rescission must typically occur within three days of the loan, the time period for rescission is extended to three years if the lender failed to provide the material disclosures required by TILA, 15 U.S.C. § 1635(f). Plaintiffs contend that the statements which indicated that they received $24,451.84 were materially inaccurate because the vast majority of that money was given directly to Brimanda Builders. To fit within the language of Regulation Z, Plaintiffs characterize this as a material inaccuracy in the "amount financed." It is undisputed that Plaintiffs' purported rescission occurred beyond three days of the closing but within three years of the closing. Therefore, the question of whether the disclosure was materially accurate will be dispositive as to whether the purported rescission was timely.

Defendants rely heavily on *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896 (3d

Cir. 1990). The Court recognized in its October 30, 2006 Memorandum Opinion that *Smith* is on-point and constitutes binding precedent. To reiterate, in *Smith*, the Third Circuit explained that Congress enacted TILA to remedy the divergent and often fraudulent practices by which credit customers were apprised of the terms of their loans. *Id.* at 898. The purpose of TILA is to assure meaningful disclosure of terms so that consumers are able to compare the various credit terms available to them. *Id.* TILA is a strict liability statute, to be liberally construed in favor of borrowers. *Id.* To implement TILA, Congress delegated expansive authority to the Federal Reserve Board, which enacted Regulation Z, 12 C.F.R. Part 226. Courts are to defer to the administrative interpretation embodied in Regulation Z unless the agency's interpretation is "obviously repugnant" to the statute. *Id.*

In *Smith*, the Third Circuit thoroughly analyzed TILA Section 1635 and Regulation Z to determine whether an error in itemizing the amounts distributed constituted a failure to provide a "material disclosure" such that the consumer could rescind the loan at any time within the three-year period set forth in Section 1635(f). The Court concluded that only the disclosures specifically set forth in Footnote 48 to Regulation Z, 12 C.F.R. § 226.23(a)(3), need be provided before the rescission period begins to run. *Id.* at 901. In other words, if the disclosures set forth in Regulation Z are made, the consumer does not have a right to rescind the loan beyond three days after consummation of the transaction. *Smith* also held, pursuant to 12 C.F.R. § 226.17(e), that disclosures rendered inaccurate by subsequent events do not violate the regulation. *Id.* at 899-900. In *Smith*, the lender withheld money to clear title but when it was unable to obtain a required release because the company had gone out of business, it simply kept the money.

Plaintiffs' argument, in essence, is that the amount disbursed at closing to Brimanda

Builders was improperly reflected as an amount received by the borrowers. The Court does not agree. As a matter of form, the money ultimately directed to Bruminda Builders *was* first disbursed by check to Plaintiff Jackson at the closing, and she then endorsed the check and returned it to the closing agent to be paid to Brimanda Builders. *See* 15 U.S.C. § 1639(i). This process is no different than the "Disbursements to Others," including PHFA, the City and County treasurers, and National City Bank, which were made on Plaintiffs' behalf out of the loan proceeds at closing. It is not unusual that the proceeds of a loan will be so disbursed at closing. Substantively, the disclosure of the "amount financed," as defined in Regulation Z, 12 C.F.R. § 226.18(b), was materially correct. All of the relevant documents state clearly that the "amount financed" by Plaintiffs was $33,750. Indeed, Plaintiffs acknowledged in their depositions that they knew that this was the total amount financed. As explained in *Smith*, the subsequent failure of performance by the contractor cannot retroactively invalidate the accuracy of the disclosure. There is no evidence in this record by which a reasonable factfinder could conclude that CIT knew on November 9, 2001 that Plaintiffs would not receive the full economic value of their construction contract. To the contrary, the record is undisputed that the work on Plaintiffs' home did not even begin until the loan transaction had been completed.

Plaintiffs argue that a "dragging the body" theory of fraud applies. Plaintiffs also argue that the Pennsylvania Home Improvement Finance Act, 73 P.S. § 500-101 et seq. was violated. Defendants respond that these claims are not cognizable because the Complaint only asserted a claim for rescission under TILA. Defendants also contend that these theories are not supported by the record in this case and are barred by the applicable statutes of limitations. The Court need not address Defendants' substantive arguments because it agrees that Plaintiffs' Complaint has

not asserted such claims. *See Tome v. Harley Davidson Motor Co.,* 2007 WL 3125090, at *7 (M.D.Pa. Oct. 24, 2007) ("Claims not alleged in a complaint may not be raised for the first time in opposition to a motion for summary judgment."); *see also Krouse v. American Sterilizer Co.*, 126 F.3d 494, 499 (3d Cir.1997).

The Court empathizes with Plaintiffs' plight. They have been left, in their words, "high and dry by incompetent contractors." Presumably, the obvious recourse of direct claims against Brimanda Builders and/or Porter Contracting will not redress Plaintiffs' grievances. The Court is aware that default judgment has already been entered against The Application Center. Nevertheless, the question now before the Court is whether CIT and MorEquity should be held responsible under TILA for this unfortunate situation. The effect of Plaintiffs' argument would turn the lenders into *de facto* guarantors of a contractor's subsequent performance. That would stretch the requirements of TILA far beyond that which is required by the statute and Regulation Z. The sad fact that a consumer will not always "get what she pays for" when she enters into a home improvement construction contract does not render the lender's initial disclosures about the "amount financed" inaccurate.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACKIE M. JACKSON and WANDA S. AUSTIN, | ) ) ) | |
| | ) | 2:06-cv-543 |
| Plaintiffs, | ) | |
| v. | ) ) | |
| THE CIT GROUP/CONSUMER FINANCE, INC., a Corporation, MOREQUITY, INC. a Corporation, THE APPLICATION CENTER LTD, a Corporation doing business as THE APPLICATION CENTER, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | | |

## ORDER OF COURT

In accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the MOTION FOR SUMMARY JUDGMENT *(Document No. 34)* of Defendant The CIT Group/Consumer Finance, Inc., and the MOTION FOR SUMMARY JUDGMENT *(Document No. 38)* of Defendant MorEquity, Inc., are **GRANTED**. The clerk shall docket this case closed.

SO ORDERED this 19th day of December, 2007.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

9

cc: Ronald D. Barber, Esquire
Email: rbarber@smgplaw.com

THE CIT GROUP/CONSUMR FINANCE, INC., a Corporation
MOREQUITY, INC., a Corporation
Keith E. Whitson, Esquire
Email: kwhitson@schnader.com

THE APPLICATION CENTER LTD, a Corporation, doing business as
THE APPLICATION CENTER